IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

CIVIL ACTION FILE NO. 7:15-cv-00238

DUPLIN WINE CELLARS, )
INCORPORATED, )
      Plaintiff )
)
  v. )     COMPLAINT
)
FARRELLY, INC. and CHRISTY )
FARRELLY, )
      Defendants )

Plaintiff Duplin Wine Cellars, Incorporated, complaining of Defendants Farrelly, Inc. and Christy Farrelly, states and alleges as follows:

## THE PARTIES

1. Plaintiff Duplin Wine Cellars, Incorporated ("Duplin") is a North Carolina Corporation with a principal place of business located in Duplin County, North Carolina.

2. Defendant Farrelly, Inc. a/k/a The Farrelly Group ("Farrelly Group") is a North Carolina Corporation with a principal place of business located in Wake County, North Carolina.

3. Defendant Christy Farrelly ("Mrs. Farrelly") is an individual who is a citizen and resident of Wake County, North Carolina.

4. Mrs. Farrelly and her husband, non-party Vince Farrelly, at times pertinent, acted for and on behalf of the Farrelly Group.

5. Duplin, and its related companies, are in the business of manufacturing, marketing and selling wine, and various other goods.

6. The Farrelly Group and Mrs. Farrelly are, and at all pertinent times have been, engaged in the business of preparing and providing advertising materials and services.

## JURISDICTION AND VENUE

7. This is an action for, among other things, a declaration regarding asserted copyright ownership and alleged copyright infringement.

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 in that this action arises under the laws of the United State and relates to copyright ownership and infringement, and has jurisdiction over all claims that form a part of the same case or controversy pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400 in that Defendants regularly conduct business in this District, have a principal place of business in this District, and reside in this District, and a substantial part of the events giving rise to this action occurred in this District.

## GENERAL ALLEGATIONS

10. During or around 2007, Duplin sought to engage a third party to assist in the creation or preparation and dissemination of advertising materials for it and its related companies.

11. During or around this time, Duplin discussed its advertising needs and desires with the Farrelly Group. Duplin informed the Farrelly Group that its needs for advertising included the needs of several related entities. The Farrelly Group then informed Duplin that it was willing and able to assist with Duplin's broad range of advertising needs.

12. On or around August 31, 2007, the Farrelly Group and Duplin entered into an Agency Agreement (the "Agency Agreement"). A true and accurate copy of the Agency Agreement is attached as Exhibit A and incorporated by reference.

13. The Agency Agreement was prepared and presented to Duplin by the Farrelly Group.

14. The Agency Agreement provides, among other things:

**Ownership and Use**

A. Agency shall insure, to the fullest extent possible under law, that DUPLIN WINE CELLARS shall own any and all right, title and interest in and to, including copyrights, trade secret, patent and other intellectual property rights, with respect to any copy, photograph, advertisement, music, lyrics, or other work or thing created by Agency or at Agency's direction for DUPLIN WINE CELLARS pursuant to this Agreement and utilized by DUPLIN WINE CELLARS.

. . .

**Term**

The term of this Agreement shall commence on **August 31, 2007** and shall continue in full force and effect until terminated by either party upon at least thirty (30) days prior written notice.

. . .

**Rights Upon Termination**

A. Upon termination of the Agreement, Agency shall transfer, assign and make available to DUPLIN WINE CELLARS all property and materials in Agency's possession or subject to Agency's control that are the property of DUPLIN WINE CELLARS, subject to payment in full of amounts due pursuant to this Agreement.

15. The Agency Agreement was signed by representatives of the Farrelly Group.

16. The Agency Agreement was signed by representatives of Duplin.

17. The Agency Agreement requires, among other things, Duplin to pay the Farrelly Group a monthly "retainer" for work that is set forth in the Agency Agreement.

18. The Agency Agreement requires that the Farrelly Group perform, among other things, the following work:

    a. "Analyze DUPLIN WINE CELLARS's current products, services and placements and present plans and ideas building on current placements."

    b. "Design and prepare advertisements, public relations, marketing materials, product photography, video, editing, and website."

    c. "Perform such other services as DUPLIN WINE CELLARS may request from time to time, such as, but not limited to, advertising design and placements, direct mail advertising preparation, speech writing, publicity and public relations work, and market research and analysis."

    d. "Order advertising space, time, or other means to be used for publication of DUPLIN WINE CELLARS's advertisements, at all times endeavoring to secure the most efficient and advantageous rates available. No agency fee will be attached to media buys. Any agency discounts will be passed on directly to DUPLIN WINE CELLARS."

19. The Agency Agreement provides that for the first year (i.e. September, 2007 through August, 2008), the monthly retainer will be in the amount of $6,000.00 (or $72,000.00 for the year).

20. At or about the time the Agency Agreement was signed and before the Farrelly Group began to perform, acting pursuant to the Agency Agreement, Duplin paid the

4
Case 7:15-cv-00238-FL   Document 1   Filed 10/30/15   Page 4 of 16

Farrelly Group an advance retainer of $6,000.00, which advance retainer was to be applied to the final month of services provided by the Farrelly Group to Duplin.

21. The Agency Agreement also provides that the Farrelly Group may take on one or more "special projects," if approved by Duplin, and, in such an instance, Duplin would pay amounts in addition to the retainer, based on an estimate prepared in anticipation of such project by the Farrelly Group.

22. The Agency Agreement does not contain language prohibiting oral modification.

23. At all times between the time the Agency Agreement was signed and executed in August 2007 and during or around January 2013, the Farrelly Group and Mrs. Farrelly acted for and on behalf of Duplin as agents for advertising and marketing.

24. Following the execution of the Agency Agreement, a variety of advertising materials for Duplin and its related companies were created or prepared by or at the direction of the Farrelly Group, and utilized for advertising and marketing by Duplin and its related companies.

25. Since the time the Agency Agreement was executed, Duplin and its related companies have enjoyed growth, and, with that growth, increased advertising demands.

26. During or around August of 2008, representatives of Duplin and representatives of the Farrelly Group met, and in recognition of the growth and increasing demands, agreed to increase the monthly retainer for the upcoming year.

27. Similarly, on subsequent occasions in 2009 and 2010, representatives of Duplin and representatives of the Farrelly Group met and agreed to increase the monthly retainer for the respective upcoming year.

28. By during or around late 2011, the monthly retainer had increased significantly, and, rather than increase it again, Duplin and the Farrelly Group agreed to a bonus to be paid to the Farrelly Group, based on the difference in the annualized retainer and the product of the number of cases of Duplin wine sold by Duplin in that calendar year times a pre-determined amount, such bonus being payable December 31 for the prior year's services.

29. At times, the Farrelly Group took on special projects for Duplin. As contemplated by the Agency Agreement, Duplin paid the Farrelly Group the additional amounts agreed to for such special projects.

30. As required by the Agency Agreement, through and including 2012, the Farrelly Group continued to be paid a monthly retainer by Duplin for performing a broad range of marketing services.

31. As further contemplated by the Agency Agreement, through and including 2012, the Farrelly Group, acting as an agent for and on behalf of Duplin, continued to arrange print, broadcast and other advertising for Duplin through third-party media providers and services, and to invoice Duplin for third-party services.

32. As contemplated by the Agency Agreement, through and including 2012, upon receipt of invoices from the Farrelly Group for print, broadcast and other advertising arranged for Duplin through third-party media providers and services, Duplin paid the Farrelly Group for the invoiced amounts.

33. The Farrelly Group was required as an agent of Duplin to pay the funds paid and entrusted to it by Duplin for third-party media providers and services to such third-parties.

34. From 2007 through 2012, the Farrelly Group participated in the design or development of all or most all of the advertising and marketing materials utilized by Duplin and its related companies, with the intent that Duplin copy, use and distribute such works in connection with developing the business and market presence of Duplin and its related companies.

35. During or around 2012, Duplin was contacted by one or more third parties that had been retained by the Farrelly Group to provide advertising and promotional services for Duplin or through which the Farrelly Group had undertaken responsibility as an agent of Duplin to arrange for and manage marketing campaigns, which third parties claimed to have not been paid for such services. This was concerning to Duplin, which had been invoiced by, and paid, the Farrelly Group for such third-party services.

36. At or around the time Duplin raised concern for the failure to pay third parties for advertising services with the Farrelly Group, the relationship between Duplin and the Farrelly Group deteriorated.

37. In or about January 2013, the Farrelly Group abruptly ceased doing any work for Duplin.

38. Since January 2013, Duplin has discovered many instances where either the Farrelly Group had overbilled Duplin for third party advertising and related services or the Farrelly Group had failed to pay third parties for advertising and related services, even though Duplin had paid the Farrelly Group after being invoiced by the Farrelly Group for such services.

39. Despite having already paid the Farrelly Group for such third-party services, Duplin has had to also pay the third parties due to the failure of the Farrelly Group to pay for the services provided.

40. The Farrelly Group did not send or deliver to Duplin at any time between August 2007 and January 2013, inclusive, any written communication terminating the Agency Agreement.

41. Duplin did not send or deliver to the Farrelly Group at any time between August 2007 and January 2013, inclusive, any written communication terminating the Agency Agreement.

42. The Agency Agreement was not terminated at any time between August 2007 and January 2013, inclusive.

43. The Farrelly Group has never returned, or properly applied, the $6,000.00 that the Agency Agreement provides will be applied to the last month's retainer fees.

44. Duplin made all required monthly retainer payments to the Farrelly Group through the end of 2012.

45. Duplin paid all invoices submitted to it by the Farrelly Group through the end of 2012.

46. After ceasing work for Duplin in or about January 2013, the Farrelly Group refused to provide Duplin with the advertising and marketing materials that had been prepared by the Farrelly Group for, and utilized by, Duplin between 2007 and 2012, inclusive.

47. After ceasing work for Duplin in or about January 2013, the Farrelly Group unilaterally shut down Duplin's website and online shopping place, and refused Duplin access to the server on which Duplin's e-mails, website and online shopping place were hosted.

48. Subsequently, the Farrelly Group has accused Duplin of copyright infringement, including of the work bearing Copyright Registration Number VA001880660, with

an effective date of registration of June 20, 2013 (the "Registered Work"), due to Duplin's use in its advertisements of works or ideas in which the Farrelly Group claims to own the copyright.

49. Since ceasing work, the Farrelly Group has failed to transfer, assign or make available to Duplin all of the files and materials in the Farrelly Group's possession or subject to its control that are the property of Duplin.

50. Duplin has complied with all of its obligations to the Farrelly Group.

**FIRST CLAIM FOR RELIEF**
(Declaratory Judgment as to Invalidity of Copyright)

51. Plaintiff incorporates all of the above allegations as if restated in their entirety herein.

52. Upon information and belief, Mrs. Farrelly registered the Registered Work, and then assigned all rights in the Registered Work to the Farrelly Group.

53. A true and accurate copy of the Certificate of Registration for the Registered Work obtained from the United States Copyright Office website, http://copyright.gov/records/index.html, is attached as Exhibit B and incorporated by reference.

54. The Certificate of Registration related to the Registered Work states that Mrs. Farrelly was the author of the Registered Work.

55. Upon information and belief, Mrs. Farrelly prepared and submitted to the United States Copyright Office an application for registration of the Registered Work in which she represented herself as the author of the Registered Work.

56. The Registered Work is a painting.

57. Upon information and belief, Mrs. Farrelly did not paint the painting that is the Registered Work.

58. That is, upon information and belief, Mrs. Farrelly is not the author of the Registered Work.

59. Rather, upon information and belief, Mrs. Farrelly willfully and intentionally misrepresented herself as the author of the Registered Work in an effort to defraud the United States Copyright Office and Register of Copyrights.

60. Upon information and belief, the United States Copyright Office and Register of Copyrights relied on Mrs. Farrelly's misrepresentation when issuing a Certificate of Registration for the Registered Work.

61. As of the time of the filing of this Complaint, the only copyright registration in any way related to Duplin issued by the United States Copyright Office to Mrs. Farrelly is the Certificate of Registration for the Registered Work.

62. As of the time of the filing of this Complaint, there is no copyright registration issued to the Farrelly Group in any way related to Duplin by the United States Copyright Office.

63. Upon information and belief, Mrs. Farrelly's objective in obtaining the Certificate of Registration for the Registered Work was to attempt to use such Certificate of Registration as a means by which to exert financial pressure on Duplin and, thereby, to exact money from Duplin in connection with the continued use of advertising materials or ideas for which Duplin already had fully paid the Farrelly Group.

64. Accordingly, the copyright in the Registered Work is not valid.

65. Duplin contends, upon information and belief, that neither the Farrelly Group nor Mrs. Farrelly has a valid copyright in the Registered Work.

66. The Farrelly Group contends that Duplin has infringed on a copyright in the Registered Work owned by the Farrelly Group by using the Registered Work in advertisements.

67. An actual, justiciable case or controversy exists between and among Duplin and the Farrelly Group and Mrs. Farrelly as to whether either the Farrelly Group or Mrs. Farrelly owns a valid copyright in the Registered Work.

68. Duplin is entitled to a declaration from the Court as to the invalidity of any copyright in the Registered Work.

69. Duplin is entitled to a decree directing the United States Copyright Office to cancel the registration of the Registered Work.

**SECOND CLAIM FOR RELIEF**
(Declaratory Judgment as to License)

70. Plaintiff incorporates all of the above allegations as if restated in their entirety herein.

71. Through the course of their relationship, the Farrelly Group created or prepared, or directed the creation and preparation of, graphic materials, derivative works, copies, photographs, compositions, lyrics, or other works or things for Duplin, and Duplin utilized such works or things in various advertisements.

72. Duplin contends it has an express license allowing it full and free use of such works or things, per the terms of the Agency Agreement.

73. Alternatively, Duplin contends it has an implied non-exclusive license to use such works or things for the purposes for which they were created or prepared.

74. The Farrelly Group contends that Duplin has no right to use such works or things, and any ongoing use by Duplin would infringe copyrights of the Farrelly Group or breach some obligation owed the Farrelly Group.

75. An actual, justiciable case or controversy exists between and among Duplin and the Farrelly Group as to whether Duplin has an express or implied license allowing Duplin to make use of such works and things.

76. Duplin is entitled to a declaration from the Court that it has an express or implied license such that any ongoing use of such works and things will not infringe any copyrights of the Farrelly Group or breach any other obligation owed the Farrelly Group.

**THIRD CLAIM FOR RELIEF**
(Declaratory Judgment as to Lack of Infringement)

77. Plaintiff incorporates all of the above allegations as if restated in their entirety herein.

78. Through the course of their relationship, the Farrelly Group created or prepared, or directed the creation or preparation of, graphic materials, derivative works, copies, photographs, compositions, lyrics, or other works or things for Duplin, and Duplin utilized such works or things in various advertisements.

79. Duplin contends it has an express license allowing it full and free use of such works or things, per the terms of the Agency Agreement.

80. Alternatively, Duplin contends it has an implied non-exclusive license to use such works or things for the purposes for which they were created or prepared.

81. The Farrelly Group contends that Duplin has no license or right to use such works or things, and that Duplin has infringed copyrights of the Farrelly Group or breached some obligation owed the Farrelly Group by making use of such works and things.

82. An actual, justiciable case or controversy exists between and among Duplin and the Farrelly Group as to whether Duplin has infringed any copyrights of the Farrelly Group or breached some other obligation owed the Farrelly Group by making use of such works and things.

83. Duplin is entitled to a declaration from the Court that it has not infringed any copyrights of the Farrelly Group or breached any other obligation owed the Farrelly Group by making use of such works and things.

**FOURTH CLAIM FOR RELIEF**
(Constructive Fraud)

84. Plaintiff incorporates all of the above allegations as if restated in their entirety herein.

85. From 2007 through at least 2012, the Farrelly Group was an agent of Duplin.

86. As an agent of Duplin, the Farrelly Group had a relationship of trust and confidence with Duplin.

87. As an agent of Duplin, the Farrelly Group owed Duplin fiduciary duties.

88. Within the scope of its agency, the Farrelly Group, among other things, arranged third parties to develop advertising materials and provide, among other things, print and broadcasting advertising placement for Duplin, and was to compensate such third parties and pass the direct costs for such advertising on to Duplin.

89. Upon information and belief, the Farrelly Group sometimes improperly marked up such costs before passing them along to Duplin.

90. Upon information and belief, the Farrelly Group sometimes invoiced costs for advertising or related services from third parties to Duplin, was paid and entrusted by Duplin

with funds to pay third parties for such services, but rather than paying the third parties with the funds entrusted to them by Duplin, converted Duplin's funds to its own uses.

91. Further, the Farrelly Group has withheld and refused to properly apply funds deposited towards the monthly retainer that Duplin paid the Farrelly Group.

92. In these ways, and such other ways as will be shown at trial, the Farrelly Group, in order to benefit itself, took advantage of its relationship with, and breached the fiduciary duties owed, Duplin.

93. The wrongful, self-dealing actions of the Farrelly Group were intentional.

94. Duplin has been damaged by the constructive fraud of the Farrelly Group, and is entitled to recover from the Farrelly Group damages in an amount to be shown at trial, including punitive damages.

### FIFTH CLAIM FOR RELIEF
(Unfair and Deceptive Trade Practices)

95. Plaintiff incorporates all of the above allegations as if restated in their entirety herein.

96. The actions of the Farrelly Group, including its constructive fraud, amount to unfair and deceptive trade practices.

97. The unfair and deceptive trade practices of the Farrelly Group were in or affecting commerce.

98. Duplin has been damaged by the unfair and deceptive trade practices of the Farrelly Group, and is entitled to recover from the Farrelly Group in an amount to be shown at trial, including treble damages and attorney's fees.

**WHEREFORE**, Duplin respectfully prays unto the Court that:

1. The Court enter a judgment declaring that neither the Farrelly Group nor Mrs. Farrelly have a valid copyright in the Registered Work.

2. The Court enter a judgment directing that the registration for the Registered Work be canceled.

3. The Court enter a judgment declaring that Duplin has an express license allowing it full and free use of those works or things created or prepared by the Farrelly Group for Duplin or its related companies. Alternatively, the Court enter a judgment declaring that Duplin has an implied non-exclusive license to use such works or things for the purposes for which they were created or prepared.

4. The Court enter a judgment declaring that Duplin has not infringed on any copyright or other rights of the Farrelly Group.

5. The Court enter judgment in favor of Duplin and against the Farrelly Group for damages in an amount adequate to compensate Duplin for the constructive fraud of the Farrelly Group.

6. The Court enter judgment in favor of Duplin and against the Farrelly Group for punitive damages in an amount sufficient to deter conduct such as the constructive fraud of the Farrelly Group.

7. The Court enter judgment in favor of Duplin and against the Farrelly Group in an amount equal to three times Duplin's damages.

8. The Court tax the costs of this action, including attorneys' fees, against the Farrelly Group and in favor of Duplin.

9. The Court grant Duplin such other and further relief as it deems just and proper.

This the 30th day of October, 2015.

>*/s/ Donalt J. Eglinton*
>Donalt J. Eglinton
>N.C. State Bar I.D. No.:  010314
>email:  dje@wardandsmith.com
>Edward J. Coyne III
>N.C. State Bar I.D. No.:  33877
>email:  ejcoyne@wardandsmith.com
>For the firm of
>Ward and Smith, P.A.
>Post Office Box 7068
>Wilmington, NC  28406-7068
>Telephone:  910.794.4800
>Facsimile:  910.794.4877
>Attorneys for Plaintiff